## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

PATRICIA WALKER,                  )
on behalf of herself and          )
all those similarly situated,     )
                                  )
                Plaintiff,        )     CIVIL ACTION NO.:
v.                                )     1:13-cv-00534-AT
                                  )
VITAL RECOVERY SERVICES, INC.,    )
VITAL SOLUTIONS, INC., and        )
CHRISTOPHER J. SHULER,            )
                                  )
                Defendants.       )

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION
## FOR CONDITIONAL CERTIFICATION AND NOTICE TO THE CLASS

### I. *INTRODUCTION*

Plaintiff filed this case under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* on behalf of herself and all other similarly situated employees.  Plaintiff contends that defendants willfully violated the FLSA by denying her and the putative class overtime pay for their hours worked in excess of 40 per week.

Plaintiff now moves the court to certify her overtime claim as a conditional collective action pursuant to 29 U.S.C. § 216(b) and approve plaintiff's proposed notice to the class.  Plaintiff seeks to represent a class of employees who worked as debt collectors at defendants' Norcross, Georgia

location.  The class period would cover the three years preceding the notice mailing date.

## II. *SUMMARY OF ARGUMENT*

Plaintiff and the opt-in plaintiffs ("plaintiffs") are former employees of defendants who worked as debt collectors at defendants' Norcross, Georgia location.  All debt collectors at the Norcross location performed similar job duties, were paid at an hourly rate, received production bonuses, and routinely worked more than 40 hours per week.  Defendants underpaid the employees overtime compensation by consistently engaging in the following unlawful practices: (i) altering their time records, and entering inaccurate information in their time records; (ii) directing them to clock out of defendants' timekeeping system and to continue working off-the-clock and not compensating them for the time worked off-the-clock; (iii) paying them overtime for some but not all of the hours they worked in excess of 40 in a workweek but miscalculating their regular rate of pay by always failing to include non-discretionary production bonus payments in the calculation; and (iv) paying them straight-time for some but not all of the hours they worked in excess of 40 in a workweek instead of paying them at one and one half times their regular rate of pay.  As a result, plaintiffs allege that they and similarly situated employees at defendants' Norcross, Georgia location were not paid proper overtime compensation for all the hours they worked in

excess of 40 hours per week at one and one half times their appropriate regular rate of pay in violation of the FLSA.

Conditional certification and judicial notice are warranted in this case because the named plaintiff and other debt collectors, including the seven opt-in plaintiffs, are similarly situated. These individuals performed similar job duties, were subject to the same pay provisions, and worked under the same unlawful compensation policies and practices that failed to pay them proper overtime wages for all work performed in excess of 40 hours per week. And a collective action is the fairest and most judicially efficient means to address the defendants' FLSA violations. Based on the lenient standard for the first stage of certification, plaintiff's motion to certify a class at defendants' Norcross, Georgia location should be granted and notice authorized for all putative class members.

### III. _STATEMENT OF MATERIAL FACTS_

**A.    The Plaintiffs and Putative Class Performed Similar Job Duties and Were Hourly-Paid Employees.**

Defendants operate a debt collection agency in Norcross, Georgia. Doc. 15 (First Amended Complaint) ¶ 13; Dyson Decl. ¶¶ 3, 5; Harrison Decl. ¶¶ 3, 5; Lynn Decl. ¶¶ 3, 5; Walker Decl. ¶¶ 3, 5. Plaintiff and the seven opt-in plaintiffs are former employees of defendants who worked as debt collectors at defendants' Norcross, Georgia location. Doc. 15 ¶¶ 5, 6, 13; Dyson Decl. ¶¶

3, 5; Harrison Decl. ¶¶ 3, 5;  Lynn Decl. ¶¶ 3, 5; Walker Decl. ¶¶ 3, 5.
Plaintiffs worked for defendants as debt collectors during the period within
three years of the date plaintiff filed her complaint.  Doc. 15 ¶ 3; Dyson Decl.
¶ 4; Harrison Decl. ¶ 4;  Lynn Decl. ¶ 4; Walker Decl. ¶ 4.

All debt collectors who worked at defendants' Norcross, Georgia
location performed similar job duties.  They all had the same primary job
responsibilities which included using the telephone to contact debtors who
resided in Georgia and in states outside Georgia in an effort to collect past
due debts.  Doc. 15 ¶ 25; Dyson Decl. ¶¶ 5, 17; Harrison Decl. ¶¶ 5, 19;  Lynn
Decl. ¶¶ 5, 19; Walker Decl. ¶¶ 5, 19.

All debt collectors at defendants' Norcross, Georgia location were
subject to the same pay provisions.  They were paid at an hourly-rate, were
non-exempt for purposes of the FLSA, and were eligible for and often received
a non-discretionary production bonus in a dollar amount for meeting
production goals.  Doc. 15 ¶¶ 26-28; Dyson Decl. ¶¶ 6-7, 15-16; Harrison Decl.
¶¶ 6-9, 16-17;  Lynn Decl. ¶¶ 6-9, 16-17; Walker Decl. ¶¶ 6-9, 16-17.  And all
debt collectors used the same electronic timekeeping system for clocking in
and clocking out each day (when the system was working), on which
defendants relied in calculating the employees' weekly wages.  Doc. 15 ¶ 35;
Dyson Decl. ¶¶ 12, 15; Harrison Decl. ¶¶ 11, 18;  Lynn Decl. ¶¶ 11, 18;
Walker Decl. ¶¶ 11, 18.   Notably, defendants' managers could, and in fact

- 4 -

did, enter the timekeeping system and alter a debt collector's time records or enter inaccurate information regarding a debt collector's work hours.  Doc. 15 ¶ 36; Harrison Decl. ¶ 12; Lynn Decl. ¶ 12; Walker Decl. ¶ 12.

### B.     The Plaintiffs and Putative Class Were Subject To The Same Unlawful Practices Denying Them Proper Overtime Compensation.

Plaintiffs routinely worked more than 40 hours per week, of which their managers were aware.  Doc. 15 ¶¶ 32, 33; Dyson Decl. ¶¶ 8-9; Harrison Decl. ¶¶ 10, 13;  Lynn Decl. ¶¶ 10, 13; Walker Decl. ¶¶ 10, 13.  Throughout plaintiffs' employment, defendants, acting through plaintiffs' managers, *underpaid* their overtime compensation by consistently engaging in the following unlawful practices: (i) altering employees' time records to reduce the number of hours they actually worked, and entering inaccurate information in their time records regarding their work hours to understate the number of hours they actually worked; (ii) directing employees to clock out of defendants' timekeeping system and to continue working off-the-clock and not compensating them for the time worked off-the-clock; (iii) paying employees overtime for some but not all of the hours they worked in excess of 40 in a workweek but miscalculating their regular rate of pay by always failing to include non-discretionary production bonus payments in the calculation; and (iv) paying employees straight-time for some but not all of the hours they worked in excess of 40 in a workweek instead of paying them

at one and one half times their proper regular rate of pay.  Doc. 15 ¶ 37; Dyson Decl. ¶¶ 10-14; Harrison Decl. ¶ 15;  Lynn Decl. ¶ 15; Walker Decl. ¶ 15.   As a result of defendants' policies and practices, defendants did not pay the plaintiffs proper overtime compensation for all hours worked in excess of 40 hours in a work week.    Doc. 15 ¶ 34; Dyson Decl. ¶ 10; Harrison Decl. ¶ 14; Lynn Decl. ¶ 14; Walker Decl. ¶ 14.  In addition to plaintiffs, defendants underpaid other debt collectors' overtime compensation by engaging in the same illegal practices as those directed to plaintiffs.  Doc. 15 ¶¶ 34, 37; Harrison Decl. ¶ 20;  Lynn Decl. ¶ 20; Walker Decl. ¶ 20.[1]

Plaintiffs and the putative class of debt collectors who worked in defendants' Norcross, Georgia location are similarly situated: (i) they performed similar job duties; (ii) they were subject to the same pay provisions; and (iii) they were subject to a common policy, practice, plan or scheme that required or permitted them to perform uncompensated work for the benefit of defendants by failing to pay for all hours worked in excess of 40 hours per week at the proper regular rate, in violation of the FLSA.  Doc. 15

---

[1] Although plaintiffs' testimony as to what they were told by co-workers is hearsay, it is admissible at this stage of the certification analysis.  On a motion for conditional certification, courts in this district apply a relaxed evidentiary standard, considering hearsay in deciding whether to issue class notice. *See, e.g., Jewell v. Aaron's, Inc.*, 1:12-CV-0563-AT, 2012 WL 2477039, at *6 n.6 (N.D. Ga. June 28, 2012) (Totenberg, J.); *McCray v. Cellco Partnership*, 1:1-CV-2821-SCJ, 2011 WL 2893061, at *3 (N.D. Ga. April 8, 2011) (Jones, J.).

¶¶ 5-46;  Dyson Decl. ¶¶ 5-17; Harrison Decl. ¶¶ 5-20;  Lynn Decl. ¶¶ 5-20; Walker Decl. ¶¶ 5-20.[2]

## C.   The Plaintiffs and Putative Class Were Economically Dependent on Vital Solutions, Inc.

Vital Recovery is a wholly owned subsidiary of Vital Solutions.  Ex. 1 (Vital Solutions website info.) at 1.[3]  Vital Solutions provided facilities and resources necessary for Vital Recovery debt collectors to perform their jobs. Doc. 15 ¶ 21; Ex. 1 at 2; Lynn Decl. ¶ 24; Walker Decl. ¶ 24.  Vital Recovery's debt collection activities took place in Vital Solutions' Norcross, Georgia location.  Ex. 1 at 2; Ex. 3 (Vital Recovery Corp. Reg., Ga. Sec. of State); Ex. 4 (Vital Solutions Corp. Reg., Ga. Sec. of State).  Vital Recovery shared the same telephone number as Vital Solutions.  Ex. 1 at 2.  Information about Vital Recovery was available only on Vital Solutions' website.  *Id.* at 1-9.

Vital Solutions exercised operational control over debt collectors who worked for Vital Recovery Services.  Doc. 15 ¶ 21.  Vital Solutions hired a company to provide payroll and benefits administration to Vital Recovery debt collectors.  Ex. 4 at 6 (Vital Solutions Employee Handbook).  Vital

---

[2] All debt collectors who worked in defendants' Norcross, Georgia location also were subject to uniform policies, procedures, practices, and guidelines of defendants regarding all other areas of their employment.  Doc. 15 ¶ 31; Harrison Decl. ¶ 22;  Lynn Decl. ¶ 23; Walker Decl. ¶ 23.

[3] Information from Vital Solutions, Inc.'s website and the Georgia Secretary of State website, albeit hearsay, is admissible based on the relaxed evidentiary standard at this stage of the certification analysis.  *See, e.g., Jewell*, 2012 WL 2477039, at *6; *McCray*, 2011 WL 2893061, at *3.

Solutions developed, enforced and implemented the policies and procedures that applied to all Vital Recovery debt collectors, and issued an employee handbook to such employees.  Doc. 15 ¶ 21; Lynn Decl. ¶ 24; Walker Decl. ¶ 24; Ex. 4.  These policies included compensation and the payment of overtime, as well as discipline and termination.  Doc. 15 ¶ 21; Ex. 4 at 12, 24, 39.  The employee handbook states: "*Vital will control your work activities and direct you in your daily job responsibilities*."  *Id.* at 6 (emphasis added). Vital Solutions controlled the hiring process for all positions at Vital Recovery, and had the authority to discipline and terminate employees.  Doc. 15 ¶ 21; Ex. 1 at 8, 24.  And anyone attempting to contact Vital Recovery was required to go through Vital Solutions.  Ex. 1 at 2-9.

D.  **Christopher Shuler, the CEO and CFO of Vital Recovery Services, Inc., Asserted Control Over the Company's Daily Operations, and Played a Role in Underpaying Overtime to Debt Collectors**

Christopher Shuler is the CEO and CFO of Vital Recovery Services. Ex. 2.  On a daily basis, Mr. Shuler sat in the same room as debt collectors, watched them work and gave directions to company managers concerning debt collectors' job duties.  Doc. 15 ¶ 9; Harrison Decl. ¶ 21; Lynn Decl. ¶¶ 21-22; Walker Decl. ¶¶ 21-22.  Mr. Shuler regularly presided over meetings with debt collectors and gave them awards for work performance.  *Id.* (all citations.)  Mr. Shuler regularly confronted debt collectors and asked detailed

questions about payments from debtors, including the amounts collected,

when payments were expected to be received, and the method of payment.

*Id.* (all citations.)  Company managers admitted to debt collectors that Mr.

Shuler made all decisions involving company operations, including debt

collectors' compensation and collectors not being paid proper overtime

compensation.[4]  *Id.* (all citations.)

## IV. *LEGAL ARGUMENT*

**A. Plaintiffs Satisfy the Requirements for Conditional Certification of Their FLSA Claims in a Collective Action Because the Plaintiffs and Putative Class are "Similarly Situated"**

### 1. *The Legal Standard for Conditional Certification*

#### (a)

Under the FLSA, employees must be paid one-and-a-half times their

regular rate of pay for all hours worked in excess of 40 per week.  29 U.S.C. §

207(a)(1).  An employee's regular rate includes her hourly rate plus any non-

discretionary production bonus.  29 U.S.C. § 207(e); 29 C.F.R. § 778.110(a)(b).

---

[4]  The statements in plaintiffs' declarations made to them by their managers are not hearsay, but admissions of a party-opponent and are admissible pursuant to Federal Rule of Evidence 801(d)(2)(D): they were made when the managers were agents of defendant and concerned a matter within the scope of their agency. *See Ross v. Corporation of Mercer University*, 506 F. Supp.2d 1325, 1341 (M.D. Ga. 2007); *see also Williams v. Consolidated City of Jacksonville,* No. 3:00-CV-469-J-32, 2006 WL 305916, at *11 (M.D. Fla. Feb. 8, 2006) ("[S]tatements made by a supervisory official who plays some role in the decision making process are generally admissible.").

Any employer that violates § 207(a)(1) is liable for all unpaid overtime compensation plus an equal amount as liquidated damages.  29 U.S.C. § 216(b).  Generally, the statute of limitations for an FLSA violation is two years.  29 U.S.C. § 255(a).  If, however, the employer acted willfully in committing its FLSA violations, the statute of limitations is three years.  *Id.*

Under 29 U.S.C. § 216(b), FLSA violations may be prosecuted through an opt-in collective action, in which current or former employees must "opt in" to the class by filing a written consent to join the action.  *Anderson v. Cagle's, Inc.,* 488 F.3d 945, 952 (11th Cir. 2007); *Cameron-Grant v . Maxim Healthcare Serv., Inc.*, 347 F .3d 1240, 1249 (11th Cir. 2003).  A collective FLSA action is especially appropriate when it permits the "efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity."  *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989).

If a collective class is conditionally certified, putative class members are given notice and the opportunity to "opt-in."  *Hipp v. Liberty Nat. Life Ins. Co.,* 252 F.3d 1208, 1218 (11th Cir. 2001).  Discovery in the case then proceeds on the issues justifying conditional certification.  *See id.*

In this case, plaintiffs allege that defendants willfully failed to pay proper overtime compensation to debt collectors based on the following unlawful practices: (i) altering employees' time records, and entering

inaccurate information in their time records, to reduce the number of hours they actually worked; (ii) directing employees to work off-the-clock and not compensating them; (iii) paying employees for some but not all of their overtime and miscalculating their regular rate by failing to include any non-discretionary bonus; and (iv) paying employees straight-time instead of one-and-one-half times their regular rate for some but not all of the hours they worked over 40 in a workweek.  Doc. 15 ¶¶ 37-39; Dyson Decl. ¶¶ 10-14; Harrison Decl. ¶ 15;  Lynn Decl. ¶ 15; Walker Decl. ¶ 15.  As a result, even though such employees worked far greater than 40-hour workweeks, they did not receive proper compensation for the overtime hours that they worked.  If the debt collectors are able to prove these allegations, the FLSA allows them to recover back wages.

**(b)**

The Eleventh Circuit favors a two-stage approach for the § 216(b) certification process.  At the earlier "notice" stage, the district court determines whether other potential class members both (i) are similarly situated in their job duties and pay provisions, and (ii) desire to opt-in. *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260-62 (11th Cir. 2008); *Anderson,* 488 F.3d at 952-53.  The second stage involves a motion for de-certification after class-wide discovery on the certification elements.  *Morgan,* 551 F.3d at 1261; *Anderson,* 488 F.3d at 952-53.

At the "notice stage," plaintiffs bear the burden to establish they are similarly situated with the group of employees they wish to represent with respect to their allegations that the law has been violated. *Grayson v . K Mart Corp*., 79 F .3d 1086, 1096-97 (11th Cir. 1995); *see Jewell*, 2012 WL 2477039, at *3. But this burden is a fairly lenient one because the decision is made at the early stages of litigation when the parties—and the Court—have minimal evidence. *Hipp,* 252 F.3d at 1218. Plaintiffs may meet their burden based only on their pleadings with declarations filed in support. *Anderson,* 488 F.3d at 952-53. And application of the lenient standard typically results in "conditional certification" of the class. *Morgan,* 551 F.3d at 1260.

In the Eleventh Circuit, plaintiffs may establish they are similarly situated one of two ways. First, plaintiffs can show that their employer engaged in a "unified policy, plan, or scheme" of FLSA violations. *Grayson,* 79 F.3d at 1095. Or plaintiffs can show that the positions of the potential class members are similar with respect to the nature of the alleged violations—and only similar, *not* identical because the standard is "elastic" at this point—as to their job requirements and pay provisions. *Morgan*, 551 F.3d at 1259-60; *Hipp,* 252 F.3d at 1217; *Jewell*, 2012 WL 2477039, at *3.

### (c)

Variations among the putative class members—such as different positions, different managers, different geographic locations, different hours

worked, and different damage calculations—is therefore insufficient to defeat certification of a collective action, certainly at the "notice stage."  As one court of appeals summarized:  "Even if the proofs . . . are inevitably individualized and distinct, [when the plaintiffs allege] common theories of defendants' statutory violations," the plaintiffs are similarly situated.  *O'Brien v. Ed Donnelly Enters.,* 575 F.3d 567, 585 (6th Cir. 2009).

So, for example, this Court applied the foregoing principles in *Jewel,* 2012 WL 2477039.  In *Jewel*, the Court granted nationwide conditional certification for a class of employees seeking unpaid overtime that had similar duties and were subject to comparable compensation practices.  *Id.* at *1, *6.  In granting notice-stage certification, the Court forcefully rejected the defendant's argument that because the class members worked for different managers in different locations and had individualized factual claims, they were not similarly situated.  *Id.* at *7-*8.  Such objections were insufficient to prevent a finding that the named plaintiff and putative class were similarly situated, certainly at the notice-stage.  *Id.* at *5 (holding that "[a]t the notice/conditional certification stage, the Court does not determine the legality of Defendant's practice or evaluate the merits of plaintiff's claim, but only determines whether the plaintiff has shown that he is similarly situated to the putative class members with respect to the nature of the alleged violations").

Likewise, conditional certification was granted by Judge Julie Carnes in *Lawson v. Bell South Tel., Inc.,* No. 1:09-cv-3528, 2011 WL 3608462 (N.D. Ga. Aug. 16, 2011) – despite typical class-wide variations.  In *Lawson*, Judge Carnes held that differences in job duties, geographic locations, and supervisors did not prevent certification of employees in nine states.  *Id.* at *7-*10.  Judge Carnes thus granted certification because the plaintiff had demonstrated that the putative class of employees had similar duties and were subject to comparable compensation practices.  *Id.*[5]

> **2.  *Plaintiffs Are Similarly Situated To The Putative Class Because They Shared The Same Job Duties And Were Subject To The Same Pay Provisions And The Same Unlawful Compensation Practices.***

Here, the plaintiffs and all putative class members performed similar

---

[5] *Accord Riddle v. SunTrust Bank*, No. 1:08-cv-1411-RWS, 2009 WL 3148768 (N.D. Ga. Sept. 29, 2009) (granting conditional certification of companywide class in various states and holding that "[a]t the notice stage, variations in specific duties, job locations, working hours, or the availability of various defenses are examples of factual issues that are not considered at this stage"); *Guerra v. Big Johnson Concrete Pumping, Inc.*, No. 05-14237-CIV, 2006 WL 2290512, *3 (S.D. Fla. May 17, 2006) (granting conditional certification despite differences in job titles, job duties, and geographic locations where plaintiff showed the existence of "a company-wide pay policy with the uniform result that the final pay of all laborers is lower than it should."); *Falcon v. Starbucks Corp.,* 580 F. Supp.2d 528, 535-40 (S.D. Tex. 2008) (denying motion to decertify a companywide class of plaintiffs seeking unpaid overtime, holding that the named plaintiffs and opt-ins were "similarly situated" because they were subject to the same FLSA violations—even though the class members worked at different locations under the supervision of different individuals).

job duties as debt collectors, and were subject to similar pay provisions.  And they were subject to the same overtime-nonpayment and underpayment practices.  Because there is substantial evidence of common practices affecting employees with the same job duties and pay provisions, certification is appropriate.  In *Alexander v. Cydcor, Inc.*, No. 1:11-CV-01578-SCJ, 2012 WL 1142449 (N.D. Ga. April 6, 2012), Judge Jones certified a conditional class of employees subjected to the same unlawful FLSA practices as in this case.  In *Alexander*, the plaintiffs alleged that the defendant underpaid overtime to a class of employees by altering their time records, entering inaccurate information in their time records, and miscalculating their regular rates in failing to include nondiscretionary payments in the calculation, among other practices.  *Alexander,* 2012 WL 1142449, at *1, *4.  Judge Jones granted certification because the plaintiffs and the putative class were similarly situated with respect to their job duties and pay provisions, and because they all were subjected to similar unlawful pay practices.  *Id.* at *4; *see Jewell*, 2012 WL 2477039, at *6 (finding that a class of hourly-paid employees with similar positions and who were subjected to a similar policy of working off-the-clock resulting in uncompensated overtime, supports conditional certification); *Kreher v. City of Atlanta*, No. 1:04-CV-2651-WSD, 2006 WL 739572, at *3-*4 (N.D. Ga. March 20, 2006) (Duffey, J.) (finding that a class of employees with similar positions and pay provisions and who were

subjected to similar unlawful pay practices of working off-the-clock and not being paid for their time and being paid for their overtime hours at a straight-time rate, supports conditional certification); *Falcon,* 580 F. Supp.2d at 536-37 (denying motion to decertify a companywide class of plaintiffs and concluding that a class of employees were similarly situated who were subjected to policies resulting in off-the-clock work and time shaving).

Plaintiff's First Amended Complaint coupled with the declarations filed with this motion show that the named plaintiff and the opt-ins plaintiffs are similarly situated to each other and to the putative class – all debt collectors who worked at defendants' Norcross, Georgia location.  They all have similar job duties, were all paid an hourly-rate, were classified as non-exempt, received non-discretionary bonuses, and used the same timekeeping system to clock-in and clock-out each day.  And they were all subject to the same unlawful compensation practices which resulted in them not receiving proper compensation for the overtime hours they worked in excess of 40 hours per week.  Moreover, although plaintiffs and the putative class worked under different managers, such variations are insufficient to defeat certification at the conditional stage.

This evidence is more than sufficient to meet the similarly situated requirement.  Thus, under the lenient standard applicable to a stage-one conditional certification analysis, the plaintiffs and putative class members

are clearly similarly situated for purposes of § 216(b).  *See Jewell*, 2012 WL
2477039, at *6 (certifying a class of hourly employees with similar positions
who worked at various locations, and who were subject to similar policy
denying them overtime); *Alexander*, 2012 WL 1142449 , at *4 (certifying class
of hourly employees in various states with similar positions and
compensation arrangements, and who were subject to similar pay practices
resulting in consistent overtime violations); *Riddle*, 2009 WL 3148768, at *2-
*3 (certifying a class of employees various states with similar job
responsibilities and pay provisions who were subject to the common practice
of not receiving overtime pay); *Kreher*, 2006 WL 739572, at *4 (certifying
class of employees in similar positions and who were subjected to similar
policies of not receiving proper overtime compensation); *Burks v. Equity
Group Eufaula Div. LLC*, No. 2:06-cv-1081, 2007 WL 3125111 at *2 (M.D.
Ala. Oct. 24, 2007) (certifying class of employees all of whom worked at the
same location, were subject to the same compensation system, had the same
or similar job duties, and sought damages for the same injuries under same
legal theory).

### 3.  <u>Other Employees Have Opted-In To The Case.</u>

Plaintiffs also meet the requirements for "notice stage" certification
because they have shown that other employees desire to opt-in to this case.
The threshold for satisfying this factor is low, as courts have granted

certification based only on a few affidavits or consents to join the lawsuit. In *Riddle*, Judge Story certified a conditional class covering the Southeastern United States based on allegations in the complaint for one named plaintiff and consents from three opt-in plaintiffs. *Riddle,* 2009 WL 3148768, at *3. Because actual notice had not yet been sent to putative class members who may be spread over a wide geographic area, the court held that it "is satisfied that three opt-in plaintiffs at this point sufficiently demonstrates an interest by other employees to opt-in to the suit." *Id.*[6]

So far, in addition to the name plaintiff, seven individuals have filed consents to join the named plaintiff's action—all of whom worked in defendants' Norcross, Georgia location. Docs. 6, 8, 9, 10, 11. And four individuals, including the name plaintiff, have filed declarations in support of

---

[6] *See, e.g., Anish v. National Securities Corp.,* No. 10-80330-cv, 2012 WL 1906500, at *1-*3 (S.D. Fla. May 25, 2012) (named plaintiff and one opt-in sufficient for nationwide certification involving hundreds of individuals); *Wynder v. Applied Card Systems, Inc.,* No. 09-80004-CIV, 2009 WL 3255585, at *1, *3 (S.D. Fla. Oct. 7, 2009) (affidavits of named plaintiff and one employee – who had not opted-in – sufficient for companywide certification covering three states); *Guerra,* 2006 WL 2290512, at *4 (affidavits of plaintiff and one employee – who had not opted-in – justified certification of a statewide class); *Reyes v. Carnival Corp.,* No. 04-21861-cv, 2005 WL 4891058, at *6 (S.D. Fla. May 25, 2005) (one named plaintiff and two opt-ins sufficient for companywide certification); *White v. Osmose, Inc.*, 204 F. Supp. 2d 1309, 1315-16 (M.D. Ala. 2002) (named plaintiff and three opt-ins sufficient for statewide certification); *accord Tyler v. Payless Shoe Source, Inc.*, 2:05-cv-33, 2005 WL 3133763, at *4 (M.D. Ala. Nov. 23, 2005 (holding that three consents was sufficient for a nationwide class, but denying certification because the employees were not similarly situated).

their FLSA claims.  In further support, plaintiffs have identified additional employees, all of whom had the same positions as plaintiffs and all of whom were subject to the same unlawful practices which plaintiffs challenge.

The name plaintiff and seven opt-in plaintiffs, as well as the putative class, are similarly situated in terms of their jobs and pay provisions, and they all want to prosecute overtime claims against defendants based on the same legal theory arising out of the same unlawful practices applied at defendants' Norcross, Georgia location.  Therefore, plaintiff has met her burden.

Accordingly, the record compels the conclusion that plaintiff and the putative class are "similarly situated" under the FLSA sufficient to warrant class certification for current and former employees of defendants who worked as debt collectors at defendants' Norcross, Georgia location.  An order of certification and notice to the class should be granted.

## B. Fairness and Judicial Efficiency Weigh in Favor of Collective Treatment Via Conditional Certification

The FLSA is designed to be a remedial statute and "should be given a broad reading, in favor of coverage."  *Pendlebury v. Starbucks Coffee Co.,* 518 F. Supp.2d 1345, 1363 (S.D. Fla. 2007).  Collective actions under § 216(b) are designed to help reduce the costs to individual plaintiffs through the pooling of resources and to promote judicial efficiency by resolving many claims in

one proceeding that involve common issues of law and fact. *Id.; see Riddle*, 2009 WL 3148768, at *4. A court must balance these benefits with any potential detriment to the defendant and the potential for judicial inefficiency that could result from collective treatment. *Pendlebury*, 518 F. Supp.2d at 1363.

Weighing all the factors in this case favors certification. The evidence shows that the potential class includes individuals who were employed in defendants' location in Norcross, Georgia. Until court-approved notice has been sent out, however, it will be unclear how many individuals desire to participate in this lawsuit. After the size of the class is determined, the parties will need to calculate the value of the participants' damages. Some individuals may have worked for only a few months and others for far longer.

Also, conditional certification in this case addresses precisely the concern raised by the court in *Bradford v. Bed Bath and Beyond*, 184 F. Supp.2d 1342, 1351 (N.D. Ga. 2002) (Story, J.). Specifically, that plaintiffs with relatively limited damages can "hardly be expected to pursue these small claims individually, so there is little likelihood that their rights will be vindicated in the absence of a collective action." *Id.*

As a practical matter, therefore, it is unlikely that the benefit and efficiencies of litigating potentially dozens of individual claims through a collective action can be outweighed by any detriment to the defendants.

> Because the plaintiffs' assertions about the defendant's purportedly improper time-keeping and pay practices play a predominant role in each of their claims, any requirement that each plaintiff prove his or her claims individually would waste more judicial time and resources than trying their cases individually would preserve.

*Wilks v. Pep Boys*, No. 3:02-cv-0837, 2006 WL 2821700, *8 (M.D. Tenn. Sept. 26, 2006).  Nor would any inefficiencies that might attend the collective treatment of the claims here outweigh certification.  *See id.*

### C. The Court Should Conditionally Certify A Class That Includes All Debt Collectors  Who Worked for Defendants at its Norcross, Georgia Location During the Past Three Years

Based on the applicable standard for certification at this stage, certification of and notice to a class of debt collectors who worked in defendants' Norcross, Georgia location should be ordered.  The class period would cover three years preceding the date Notice is mailed to the putative class.  A proposed opt-in notice and consent form are attached.  Exs. 5, 6.

Plaintiff also proposes that the Notice packet sent to class members contain a postage paid return envelope addressed to plaintiff's counsel. *Alexander*, 2012 WL 1142449, at *9 (directing that Notice packet to class members include a self-addressed, postage paid return envelope).  Plaintiff further purposes that the front of the envelope containing the Notice packet addressed to putative class members state the following language to alert recipients that the envelope is not "junk mail":

> **LEGAL NOTICE:**
> **UNPAID OVERTIME LAWSUIT**
> <u>**AGAINST VITAL RCOVERY SERVICES**</u>
> - You could get overtime pay for some of the hours you worked as a debt collector for Vital Recovery Services.
> - Your prompt attention is required.

Courts have consistently approved similar language to what plaintiff proposes here. *E.g., Graham v. Overland Solutions, Inc.*, 2012 WL 4009547, at *11 (S.D. Cal. 2012) ("Important Legal Document. If you were employed by Overland Solutions, Inc., as a Premium Audit Field Representative in California during the relevant time period, you may be entitled to recover money from a Class Action Settlement. Your Prompt Attention is Required."); *Putnam v. Galaxy 1 Marketing, Inc.*, 276 F.R.D. 264, 276-77 (S.D. Iowa 2011) ("Court Authorized Notice of Unpaid Overtime Lawsuit. Deadline to Join."); *Gandhi v. Dell Inc.*, 2009 WL 3427218, at *3-*4 (W.D. Texas 2009)("Court Authorized Notice of Unpaid Overtime Lawsuit Against Dell. Deadline to Join.").

### D. Defendants Should Be Ordered To Produce The Names And Addresses Of All Putative Class Members For The Last Three Years

To facilitate prompt notice, and—equally important—to access potentially critical testimony, defendants should be ordered to produce the names and addresses of all putative class members who worked for defendants in an electronic format within twenty (20) days of the Court's

order granting conditional certification. *Hoffman-LaRoche*, 493 U.S. at 170 (holding that a defendant should provide the names and addresses of class members in collective actions).

Defendants should also be ordered to supply the last four digits of the social security numbers for all putative class members. The purpose of having this information is to assist in locating individuals within the time allowed in the Court's authorized notice in the event the notice is returned as undeliverable or an employee's address is unavailable.

### E. Plaintiffs and the Putative Class are Similarly Situated as to Vital Solutions, Inc. and Christopher Shuler Having Joint Employer Liability.

A company or an individual may be liable for FLSA violations as a joint employer. *See* 29 C.F.R. § 791.2(a); *Layton v. DHL Express (USA), Inc.*, 686 F.3d 1172, 1175 (11th Cir. 2012); *Rubio v. Fuji Sushi & Teppani, Inc.* 2013 WL 230216, at *5 (M.D. Fla. Jan. 22, 2013). Determining whether a defendant is a joint employer for purposes of FLSA liability, however, is not appropriate at the stage-one analysis for conditional certification. *See, e.g., Johnson v. VCG Holding Corp.*, 802 F.Supp.2d 227, 239 (D. Me. 2011); *Choimbol v. Fairfield Resorts, Inc.,* 475 F. Supp.2d 557, 563 (E.D. Va. 2006). That is because the stage-one analysis is limited to whether the plaintiffs and the putative class are "similarly situated with respect to the legal and, to a lesser extent, the factual issues to be determined." *Choimbol,* 475 F. Supp.2d

at 563*; see Hipp*, 252 F.3d at 1217-18 (first stage analysis limited to whether putative class is similarly situated in their job duties and compensation and were subjected to a common policy or scheme).

At this stage of the collective action analysis, plaintiffs have demonstrated under the lenient standard that they are similarly situated to the putative class with respect to Vital Solutions, Inc. and Christopher J. Shuler having joint employer liability under the FLSA.  In determining whether joint employment exists, a court examines "if, as a matter of economic reality, the individual is dependent on the entity".  *Layton*, 686 F.3d at 1175.  Courts consider the following factors: (1) the nature and degree of control over the workers; (2) the degree of supervision, direct or indirect of the work; (3) the power to determine the pay rates or the methods of payment of the workers; (4) the right, directly or indirectly, to hire, fire, or modify the employment conditions of the workers; (5) preparation of payroll and the payment of wages; (6) ownership of the facilities where work occurred; (7) performance of a specialty job integral to the business; and (8) investment in equipment and facilities.  *See id.; Rubio,* 2013 WL 230216, at *5 (holding that for a company officer to be personally liable, he "must either be involved in the day-to-day operation or have some direct responsibility for the supervision of the employee.").

Here, plaintiff's Amended Complaint and the submitted declarations and other evidence in support, show that Vital Recovery debt collectors were economically dependent on Vital Solutions, Inc. and Christopher J. Shuler.[7] Vital Solutions and Christopher Shuler exercised control and supervision over debt collectors with respect to hiring, discipline, termination, job responsibilities, daily operations, and policies and procedures including compensation.  Vital Solutions was responsible for providing payroll and benefits to all Vital Recovery debt collectors, and Christopher Shuler rewarded debt collectors' performance.  Finally, Vital Solutions provided the facilities and equipment necessary for debt collectors.  Debt collectors worked at Vital Solutions' premises.  And Vital Solutions created and provided debt collectors with employee handbooks, controlled the website that provided information about Vital Recovery, and provided the telephone number for Vital Recovery.

Therefore, under the lenient standard of the stage-one collective action analysis, plaintiffs have demonstrated they are similarly situated to the putative class of debt collectors with respect to whether Vital Solutions and Christopher Shuler have joint employer liability for FLSA violations. Certification should be granted and notice ordered.

_____

[7] Doc. 15 ¶¶ 9, 19, 21; Harrison Decl. ¶ 21; Lynn Decl. ¶¶ 21-24; Walker Decl. ¶¶ 21-24; Exs. 1-4.

## CONCLUSION

Under the lenient standard of the stage-one collective action analysis, there is more than sufficient evidence that the named plaintiff, seven opt-in plaintiffs, and the putative class are similarly situated for the purposes of conditional certification.  Plaintiffs and the putative class had the same job duties, were paid the same way, were subject to the same policies and procedures, and worked in the same location.  They were subject to the same compensation practices at issue in this lawsuit – that resulted in them not being paid their proper overtime compensation.  And they seek damages for the identical injuries under the identical facts and legal theory.  Under these circumstances, conditional certification is appropriate.  Certification should be granted and notice ordered.

> **s/ Alan H. Garber**
> Alan H. Garber
> Georgia Bar No. 283840
> Marc N. Garber
> Georgia Bar No. 283847
> THE GARBER LAW FIRM, P.C.
> Suite 14, 4994 Lower Roswell Road
> Marietta, GA  30068
> (678) 560-6685
> (678) 560-5067 (facsimile)
> ahgarber@garberlaw.net
> mngarber@garberlaw.net
>
> **COUNSEL FOR PLAINTIFF**
> on behalf of herself and all those
> similarly situated

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing pleading was electronically filed with the Clerk of Court by using the CCM/ECF system, which will send a notice of electronic filing to all attorneys of record.

Dated:  May 16, 2013.

<u>***s/Alan H. Garber***</u>
Alan H. Garber