## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| LAVERN LYNN, *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION NO. |
| | ) | |
| v. | ) | |
| | ) | 1:13-cv-0534-AT |
| VITAL RECOVERY SERVICES, *et al.*,) | | |
| | ) | |
| Defendants. | ) | |

## PAINTIFFS' UNOPPOSED MOTION
## FOR AN ORDER APPROVING THE SETTLEMENT
## OF FAIR LABOR STANDARDS ACT COLLECTIVE
## ACTION, APPROVING AND AUTHORIZING THE ISSUANCE
## OF NOTICE OF SETTLEMENT, APPROVING A SERVICE
## AWARD, AND APPROVING ATTORNEY'S FEES AND COSTS

Plaintiff Lavern Lynn and all of the 70-plus opt-in plaintiffs ("Plaintiffs") move that the Court—pursuant to *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350 (11th Cir. 1982)—(1) approve the parties' settlement of Plaintiffs' claims under the Fair Labor Standards Act ("FLSA") [Ex. 1: Joint Stipulation of Settlement and Release]; (2) approve the proposed form of Notice of Settlement and Opportunity to Join ("Proposed Notice") and its issuance to the opt-in plaintiffs [Ex. 2: Proposed Notice]; (3) approve a service award of $1,000 to Name Plaintiff Lavern Lynn; and (4) approve the amount of attorney's fees and costs that the defendants have agreed to pay Plaintiffs' counsel and the payment terms.

In accordance with the terms of the parties' settlement, Plaintiffs further move that the Court's order of dismissal state that (i) the claims of all opt-ins who negotiate the checks providing them payments from the settlement fund are dismissed with prejudice, (ii) the claims of all opt-ins who do not negotiate the checks providing them payments from the settlement fund are dismissed without prejudice, and (iii) the Court retains jurisdiction over this matter until the terms set forth in the Joint Stipulation of Settlement and Release have been complied with in full.

Defendants Vital Recovery Services, Inc., Vital Solutions, Inc., and Christopher J. Shuler ("Defendants") **do not oppose** this motion.

The parties' settlement here is the product of extensive investigation, the exchange of substantial amounts of data and analyses of the data, and arm's length exhaustive and lengthy negotiations.  The individual settlement payments to Plaintiffs total more than $25,000 which includes unpaid back overtime and an equal amount in liquidated damages [Ex. 3].  These payments appear to constitute complete relief, thus making the settlement fair and reasonable under *Lynn's Food*.[1]  Also, Plaintiffs' counsel will receive

---

[1] The parties have not conducted formal discovery.  However, the parties conferred as to available data that could be used to assess the possibility of work performed off-the-clock a methodology for the review and analyses of the data so as to determine amounts owed, if any, to each opt-in.  Based on the materials and data that Defendants voluntarily provided during the parties' negotiations, complete relief for all 72 Plaintiffs appears to have been

attorney's fees and costs totaling $110,000, payable by Defendants over a 10-month period.  The amount of attorney's fees and costs were negotiated separately from and after the parties had already agreed on Plaintiffs' settlement payments.

The parties' settlement satisfies the criteria for approval of an FLSA collective action settlement.  The settlement resolves a bona-fide dispute, was reached after contested litigation, and was the result of arm's-length settlement negotiations by counsel well-versed in wage-and-hour law.

---

obtained.  After the Court granted Plaintiff's Motion to Nullify and Strike Defendants' Rule 68 Offers of Judgment [Doc. 107], Defendants provided Plaintiffs with data relevant to their claims as well as a data-based analysis. Based on the analysis, 17 opt-ins are receiving settlement amounts greater than the amounts offered to them in Defendants' previous Rule 68 and non-Rule 68 offers.  The analysis also shows that 52 of the opt-ins are receiving more than complete relief because they are receiving the amounts in Defendants' previous Rule 68 and non-Rule 68 offers, which exceed the amounts the analysis demonstrated they are owed.  (3 opt-ins had accepted Defendants' Rule 68 Offers and were not part of plaintiffs' Motion to Nullify and Strike.)  The analysis demonstrated that 19 opt-ins who were originally offered $100 under Rule 68 were entitled to no recovery.  Defendants, nevertheless, have agreed to pay them the amount originally offered.  (4 of these opt-ins had accepted Defendants' Rule 68 offer, which were struck under the Court's Order.)  In addition, the analysis demonstrated that the amounts owed to 33 opt-ins were less than the amounts offered to them in Defendants' previous Rule 68 and non-Rule 68 offers.  Defendants, nevertheless, have agreed to pay them the higher amounts originally offered. 22 of these offers were for $100.  (11 of these opt-ins had also accepted Defendants' Rule 68 offer, totaling $4,017, which were struck under the Court's Order.)  Accordingly, the parties' settlement eliminates any need for the Court to revisit the question—reserved in the Order—whether Defendants' Rule 68 offers should be reissued.

Plaintiffs' motion relies on (i) the record in this action, (ii) the factual recitation below, (iii) the Joint Stipulation of Settlement and Release between name-plaintiff Lavern Lynn and Defendants [Ex. 1], and (iv) the proposed "Notice of Settlement & Opportunity to Participate" [Ex. 2] to accompany the settlement checks to the opt-in plaintiffs, which explains that an opt-in plaintiff's acceptance of their settlement checks will result in the full and complete release of all FLSA and Georgia wage-law claims against Defendants.

## I. <u>Factual Background</u>

This collective action was filed on February 19, 2013, alleging that Defendants violated the FLSA by not paying the proper overtime compensation in violation of 29 U.S.C. § 207.[2]  *See* Docs. 1, 15, 127.  Plaintiff alleged that she had been employed by Defendants as a debt collector, and along with other similarly situated employees, alleged three FLSA damages theories:  (1) failure to include bonus payments in overtime calculation; (2) uncompensated off-the-clock work; and (3) falsification of plaintiff's time records.  Doc. 107 at 1-2.  Defendants timely answered, denying the commission of any FLSA violations.  *See* Doc. 20.

---

[2] The claims alleged in this action were originally filed by plaintiff Patricia Walker.  On August 4, 2015, plaintiff Lavern Lynn was ordered substituted for Ms. Walker as the name plaintiff here through the filing of the Second Amended Complaint.  Docs. 126, 127.

On June 13, 2013, the Court granted the parties' Joint Motion for Conditional Certification and Notice to the Class and to Stay Discovery. Doc. 28. More than 70 opt-in plaintiffs joined this action. *See* Doc. 107 at 2.

The parties thereafter commenced settlement discussions, which included Defendants' voluntary provision of substantial amounts of raw data relating to the damages calculation for Plaintiffs. The parties conferred extensively regarding this information and reached an agreement, for settlement purposes only, that comparing each Plaintiffs' work and time records from Defendants' electronic record-keeping systems was the most reasonably accurate method of calculating each Plaintiffs' potential damages. Doc. 122 at 2. Defendants prepared spreadsheet analyses for each of the Plaintiffs that analyzed this data. *Id*. Defendants provided their analyses (and the raw data) to Plaintiffs, including a bonus-claim analysis, to assist the parties' in resolving this action. *Id*. Plaintiffs' Counsel reviewed both the analyses and the raw data for each opt-in and confirmed the accuracy of the analyses.

On May 18, 2015, the parties concluded their arm's-length negotiations and settled Plaintiffs' underlying FLSA claims, pending resolution of non-monetary terms. The parties agreed to a total settlement amount of $25,189.26 for Plaintiffs' underlying FLSA claims, and a service payment to name Plaintiff Lavern Lynn of $1,000.00 for services she rendered to the

class.  Subsequently, on August 12, 2015, the parties reached a settlement of Plaintiffs' claim for attorney's fees and costs in the amount of $110,000.00. *See* Ex. 4: Decl. Alan H. Garber ¶¶ 3-7; Ex. 5: Decl. Marc Garber ¶¶ 2-3.  The parties then agreed on the terms of the written Joint Stipulation of Settlement and Release between name plaintiff Lavern Lynn and Defendants ("Settlement Agreement") and the content of the proposed Notice of Settlement & Opportunity to Participate ("Notice") to accompany each Plaintiffs' settlement checks.

Through their respective counsel, the parties are familiar with the underlying facts and the legal issues raised by the pleadings.  The parties have engaged in arm's-length settlement negotiations since soon after the Court's conditional certification order.  The terms and conditions of settlement reflected in the Settlement Agreement and the Notice are a product of the parties' exhaustive negotiations here and represent a reasonable compromise of the disputed issues in this case.

In addition, the parties entered into this settlement because they believe it reflects a reasonable compromise of the disputed claims and issues here.  Plaintiffs submit that the terms and conditions of the settlement, set forth in the Settlement Agreement and the Notice, are fair, reasonable, and in the best interest of both Plaintiffs and Defendants.  Plaintiffs further submit that the certainty of settlement is better than the uncertain outcome

of protracted litigation.  Finally, after being advised in writing by Plaintiffs'

counsel as to the range of possible outcomes in this action and the substantial

risks associated with proceeding to trial, nearly all Plaintiffs who responded

to counsel's communication stated that they personally accepted their

proposed settlement as fair and reasonable.

### *LEGAL ARGUMENT*

### I.  The Settlement is Fair and Reasonable

### *1.A.  The Payments to Plaintiffs Satisfy* Lynn's Food

In *Lynn's Food*, the Eleventh Circuit explained that claims under the

FLSA may be settled or compromised only if the Department of Labor

supervises the payment of back wages or if the district court enters a

stipulated judgment, but only "after scrutinizing the settlement for fairness."

679 F.2d 1350, 1353.  Similarly, the "FLSA requires judicial review of the

reasonableness of counsel's legal fees to assure both that counsel is

compensated adequately and that no conflict of interest taints the amount

the wronged employee recovers under a settlement agreement."  *Silva v.*

*Miller,* 307 F. App'x. 349, 351 (11th Cir. 2009) (per curiam).

Here, the parties' settlement represents a fair and reasonable

compromise of Plaintiffs' claims.  *See* Ex. 1.  The settlement payments are

composed of unpaid back overtime and an equal amount in liquidated

damages.  Plaintiffs alleged here that Defendants failed to compensate them

properly under the FLSA for all their work in excess of 40 hours per week. The reason, as alleged by Plaintiffs, is their bonus payments were not included in their overtime calculation, they worked off the clock, and their time records were falsified.  Defendants denied these allegations.  However, based on Defendants' pay, time, and work records, the parties were able to calculate—for settlement purposes only—what appears and is reasonably believed to be complete relief for Plaintiffs.

Each side faced significant litigation risk in this action.  The settlement thus accounted for a range of possible outcomes that could be impacted by disputed fundamental facts, including:  arguments over the meaning of entries in time records; the amount of time Plaintiffs' activities should have taken; Plaintiffs' hourly rates; their employment periods; and Defendants' good-faith reliance on a third-party's advice.

Also, none of the Plaintiffs had contemporaneously created records documenting all the total number of unpaid hours allegedly worked in excess of 40 per week.  Conversely, Defendants had paid the Plaintiffs overtime compensation when their time records reflected hours worked in excess of 40 per week—a fact that arguably undermined both Plaintiffs' claims on the merits and Plaintiffs' allegation that the Defendants acted willfully.  And Defendants had witnesses who would testify that Plaintiffs did not work off the clock.

Consequently, on their off-the-clock and false-entries claims, Plaintiffs' arguments boiled down to their own statements supported in part by various time and pay records versus Defendants' practice of paying overtime, witnesses who contradicted plaintiffs, and other documentary materials.  At bottom, witness credibility was critical.

The evidence—while likely sufficient to preclude summary judgment—nevertheless presented significant risks at trial to ***both*** sides on the issues of liability, Defendants' good faith, and damages.  On the one hand, Plaintiffs faced the prospect of failing to convince a jury to award damages for three years, let alone the amount of the proposed settlements.  *See Wingrove v. D.A. Techs., Inc.*, No. 1:10-cv-3227-HLM, 2011 WL 7324219, at *2 (N.D. Ga. Feb. 14, 2011) (evaluating the parties' relative litigation risks in approving their FLSA settlement); *Shelton v. Family Dollar Stores of Indiana, LP*, No. 105-cv-756, 2007 WL 1597650, at *9 n. 9 (S.D. Ind. June 1, 2007) (noting that, while summary judgment was not merited, an overtime case based almost entirely on a plaintiff's own testimony is not a strong one).

On the other hand, Defendants' risk was that a jury would reject its good-faith defense as well as credit Plaintiffs' testimony on the off-the-clock claims in full or part.  *Wingrove*, 2011 WL 7324219, at *2.  As a result, a jury may award all or a portion of the wages claimed by Plaintiffs in an amount exceeding the proposed settlement.  *Id.*

Each side thus faced substantial continuing litigation expenses that, given these risks arising from the competing factual narratives, offered no guarantee of success at the case's conclusion.  *See Leverso v. SouthTrust Bank of Ala.*, 18 F.3d 1527, 1531 & n. 6 (11th Cir. 1994) (listing considerations used to approve a settlement).  Equally important, the extension of the case for several more months—and even longer with possible appeals—would impose a substantial additional hardship.  *Id*.  Therefore, Plaintiffs and Defendants all favored the settlement and avoidance of an extension of the action.  *See id*.  Also, counsels' respective views favored the proposed settlements in light of the risks central to any trial.  *Id*.

Equally important, there has been no collusion or fraud here.  The settlement was reached through exhaustive and lengthy arm's length negotiation between counsel.

Finally, nearly all Plaintiffs who responded to class counsel's written inquiry personally find their settlements to be fair and reasonable.  *See id*.  They were advised of the range of possible outcomes in this action and the substantial risks associated with proceeding all the way to trial.  All of Plaintiffs were informed by class counsel as to (i) the proposed individual payments, (ii) that Defendants would pay the class counsel's attorney's fees and costs separately from Plaintiffs' recovery, and (iii) Plaintiffs had no obligation to pay any attorney's fees or costs.

In sum, given the foregoing circumstances, the proposed settlement represents a fair and reasonable resolution of Plaintiffs' individual claims. *See Dail v. George A. Arab, Inc.*, 391 F. Supp.2d 1142, 1146 (M.D. Fla. 2005) (noting the "strong presumption" in favor of finding a settlement fair under the FLSA).  The Court is therefore urged to approve the parties' settlement.

The Court should also approve the agreed Proposed Notice and the Consent to Join Settlement.  Ex. 2.  The Proposed Notice sufficiently informs Eligible Settlement Class Members of the terms of the settlement, the amount to which they are entitled, the settlement process, and the scope of the release.  *See Wade v. Werner Trucking Co.*, No. 10 Civ. 270, 2014 WL 2535226, at *1 (S.D. Ohio June 5, 2014) (approving "Settlement Notice and Option Form proposed by the Parties" as "fully and accurately inform[ing] the FLSA Collective Class Members of all material elements of the Litigation and the Agreement").

### 1.B.  *The Service Award to Plaintiff Lavern Lynn is Reasonable*

The Settlement Agreement provides that, with Court approval, Plaintiff Lavern Lynn will receive a $1,000 service award in recognition of assistance rendered in obtaining the benefits of the settlement for the collective group.  Plaintiff Lavern Lynn assisted counsel in the investigation of Plaintiffs' claims.  Notably, Plaintiff Lynn's service award was negotiated and agreed upon separately and without regard to the total amounts

- 11 -

Defendants agreed to pay Plaintiffs.   "Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the risks they incurred during the court of the class action litigation." *Ingram v. The Coca-Cola Co.,* 200 F.R.D. 685, 694 (N.D. Ga. 2001) (collecting cases); *see Dallas v. Alcatel-Lucent USA, Inc.*, No. 09 Civ. 14596, 2013 WL 2197624, at *10 (E.D. Mich. May 20, 2013) ("[C]lass representatives who have had extensive involvement in a . . . litigation deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone."); *see also Griffin v. Flagstar Bancorp. Inc.*, No. 10 Civ. 10610, 2013 WL 6511860, at *9 (E.D. Mich. Dec. 12, 2013) (stating that service "awards have been approved by the Sixth Circuit"); *In re Packaged Ice Antitrust Litig.*, No. 98 MDL 1952, 2012 WL 5493613, at *9 (E.D. Mich. Nov. 13, 2012) (substantially same).

Courts acknowledge that named plaintiffs in class and collective actions play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  *See, e.g.*, *In re Packaged Ice Antitrust Litig.*, 2012 WL 5493613, at *9 (service awards are "well deserved" when class representative spent "time and effort . . .  all to the general benefit of the class") (citing *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 536 (E.D. Mich. Oct. 10, 2003) (service awards "deserve[d]" when named plaintiffs "devoted a significant amount of time to the prosecution of this matter for the

benefit of absent Class members"); *Aros v. United Rentals, Inc.*, Nos. 10 Civ.

73, *et al.*, 2012 WL 3060470, at *3 (D. Conn. July 26, 2012); *Clark*, 2010 WL

1948198, at *9; *Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*, No. 08 Civ.

7670, 2010 WL 532960, at *1  (S.D.N.Y. Feb. 9, 2010) ("Enhancement awards

for class representatives serve the dual functions of recognizing the risks

incurred by named plaintiffs and compensating them for their additional

efforts."); *Velez v. Majik Cleaning Serv.*, No. 03 Civ. 8698, 2007 WL 7232783,

at *7 (S.D.N.Y. June 25, 2007) ("in employment litigation, the plaintiff is

often a former or current employee of the defendant, and thus, by lending his

name to the litigation, he has, for the benefit of the class as a whole,

undertaken the risk of adverse actions by the employer or co-workers")

(internal quotes and citation omitted); *see also* Nantiya Ruan, *Bringing Sense

to Incentive Payments: An Examination of Incentive Payments to Named

Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp.

Pol'y J. 395 (2006) (discussing the importance of aggregation of claims in the

prosecution of civil and wage and hour rights); *see also Hadix v. Johnson*, 322

F.3d 895, 897 (6th Cir. 2003) ("[I]ncentive awards are efficacious ways of

encouraging members of a class to become class representatives and

rewarding individual efforts taken on behalf of the class.").

Incentive awards are within the discretion of the court.  *See Dallas*,

2013 WL 2197624, at *10-11; *Date*, 2013 WL 3945981, at *13; *see also Frank*

*v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) ("Incentive awards are not uncommon in class action cases and are within the discretion of the court."; Incentive "awards are particularly appropriate in the employment context.").  In examining the reasonableness of service awards to plaintiffs, courts consider: (1) the actions they took to protect the interests of class or collective action members, and whether those actions resulted in substantial benefit to class or collective action members; (2) the personal risk they incurred; and (3) the amount of time and effort they spent in pursuing the litigation.  *See, e.g.*, *Bert v. AK Steel Corp.*, No. 02 Civ. 467, 2008 WL 4693747, at *3 (S.D. Ohio Oct. 23, 2008); *In re Skechers Toning Shoe Products Liab. Litig.*, Nos. 11 MD 2308, *et al.*, 2013 WL 2010702, at *14 (W.D. Ky. May 13, 2013); *see also Dallas*, 2013 WL 2197624, at *10 (in common fund cases, class representatives "deserve compensation above and beyond amounts to which they are entitled to by virtue of class membership alone"); *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 787 (N.D. Ohio 2010) (same).  Here, Plaintiffs satisfy all three factors.

Here, Plaintiff Lynn took substantial actions to protect the interests of potential collective action members, and those actions resulted in a substantial benefit to the collective action members.  Plaintiff Lynn participated in a substantial pre-suit investigation and provided primary-source information crucial to establishing Plaintiffs' claims.  *See Frank*, 228

F.R.D. at 187 (recognizing the important role that class representatives play as the "primary source of information concerning the claims[,]" including by responding to counsel's questions and reviewing documents).

In addition, Plaintiff Lynn assumed substantial direct and indirect risks. She agreed to bring the action in her name, which included the possibility of being deposed and testifying if there was a trial. In so doing, Plaintiffs and Opt-In Plaintiffs assumed the risk of retaliation and blacklisting. *Frank*, 228 F.R.D. at 187 (Incentive "awards are particularly appropriate in the employment context . . . [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers")*; see also Bozak*, 2014 WL 3778211, at *5 (lead plaintiff "assumed risk of retaliation"); *Silberblatt v. Morgan Stanley*, 524 F. Supp. 2d 425, 435 (S.D.N.Y. 2007) ("A class representative who has been exposed to a demonstrable risk of employer retaliation or whose future employability has been impaired may be worthy of receiving an additional payment, lest others be dissuaded."); *Velez*, 2007 WL 7232783, at *7 (observing that named plaintiffs "exposed themselves to the prospect of having adverse actions taken against them by their former employer and former co-workers").

Even where no actual retaliation occurs, as appears to be the case here, class representatives merit recognition for assuming the risk of retaliation for the sake of absent class members. *See Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *14 (S.D.N.Y. Apr. 16, 2012) ("Plaintiffs litigating cases in an employment context face the risk of subjecting themselves to adverse actions by their employer."); *Guippone*, 2011 WL 5148650, at *7 ("Even where there is not a record of actual retaliation, notoriety, or personal difficulties, class representatives merit recognition for assuming the risk of such for the sake of absent class members."); *Frank*, 228 F.R.D. at 187-88 ("Although this Court has no reason to believe that Kodak has or will take retaliatory action towards either Frank or any of the plaintiffs in this case, the fear of adverse consequences or lost opportunities cannot be dismissed as insincere or unfounded.").

Although Plaintiff Lynn was no longer employed by Defendants when she joined the lawsuit, she risked retaliation from her current employer and put her ability to secure future employment at risk. *See Sewell*, 2012 WL 1320124, at *14 ("[F]ormer employees [] fac[ed] [sic] potential risks of being blacklisted as 'problem' employees."); *Guippone*, 2011 WL 5148650, at *7 ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker*, 2010 WL 532960, at *1 ("[F]ormer

- 16 -

employees put in jeopardy their ability to depend on the employer for references in connection with future employment."). Service awards "provide an incentive to seek enforcement of the law despite these dangers." *Parker*, 2010 WL 532960, at *1.

Finally, the amount of the requested service award is reasonable and consistent with awards that have been granted in employment class and collective actions. *See, e.g.*, *Swigart v. Fifth Third Bank*, No. 11 Civ. 88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) ("The modest class representative award requests of $10,000 to each of the two Class Representatives have been tailored to compensate each Class Representative in proportion to his or her time and effort in prosecuting the claims asserted in this [FLSA] action."); *Bert*, 2008 WL 4693747, at *1, *3 (finding service award of $10,000 to five class representatives was "rather modest" and "fair and reasonable" in employment discrimination case). In FLSA cases in this Circuit and elsewhere, courts consistently approve service awards that are larger than what Plaintiffs request here. *See Swigart*, 2014 WL 3447947, at *7 ($10,000); *see also Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each class representative); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff); *Alli v. Boston Mkt. Corp.*, No. 10 Civ.

00004, 2012 WL 1356478, at *3 (D. Conn. Apr. 17, 2012) (approving service awards of $12,000 for named plaintiffs); *Sewell*, 2012 WL 1320124, at *14-15 (approving service payments of $10,000 and $15,000); *Willix v. Healthfirst, Inc.*, No. 07 Civ. 1143, 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving awards of $30,000, $15,000, and $7,500 to class representatives and opt-ins); *Khait v. Whirlpool Corp.*, No. 06 Civ. 6381, 2010 WL 2025106, at *9 (E.D.N.Y. Jan. 20, 2010) (approving $15,000 and $10,000 to named plaintiffs).

### I.C.   *The Amount of Attorney's Fees and Costs is Fair and Reasonable*

The amount to be paid to Plaintiffs' counsel in attorney's fees and costs—$110,000 payable over 10 months—was negotiated only *after* the parties had settled the amount payable to Plaintiffs.  *See* Ex. 4: Decl. Alan H. Garber ¶¶ 7.  And Plaintiffs' attorney's fees payment was negotiated and agreed upon separately and without regard to the total amount Defendants agreed to pay Plaintiffs.  *Id.*  Consequently, any potential conflict of interest between Plaintiffs and counsel was avoided.  *See Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp.2d 1222, 1228 (M.D. Fla. 2009) ("[T]he best way to insure that no conflict has tainted the settlement [of an FLSA claim] is for the parties to reach agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered.").

The claims alleged in this action had originally been filed and dismissed *with* prejudice by plaintiff Patricia Walker in Case No. 12-CV-0654-AT.  This Court, however, granted the motion of Plaintiff's counsel to vacate Ms. Walker's dismissal with prejudice, which allowed this newly filed action to proceed.  This case was conditionally certified.  More than 70 opt-ins joined the case.  And those 70-plus individuals will now receive some compensation under the FLSA, as a result of Plaintiff counsel's efforts.

The attorney's fees amount bears a 4.37-to-1.00 ratio to Plaintiffs' recovery, which is well within the acceptable range for attorney's fees-to-recovery approved by the Eleventh Circuit, other judges in this district, and by other district courts.[3]  That attorney's fee figure includes out-of-pocket expenses of $1,263.00 incurred by plaintiffs' counsel in filing and serving the complaint, and paying an administrator for sending out the collective action notice to the class; plus attorney's fees in the amount of $108,737.00.  *See* Ex. 4: Decl. Alan H. Garber ¶¶ 5.

Plaintiffs originally sought $150,963.00 in attorney's fees and costs. But, after negotiations with Defendants, Plaintiffs agreed to the lesser

---

[3] *E.g., McKenzie v. Cooper, Levins & Pastko, Inc.*, 990 F.2d 1183, 1185 (11th Cir. 1993) (12:1 ratio of award of attorney's fees to recovery approved in a Title VII case); *Ekeberg v. Shook-Brown*, No. 2:08-cv-0195-RWS, 2010 WL 1540129 (N.D. Ga. April 15, 2010) (approving a 3.6:1 ratio of a fees award to recovery); *accord, e.g., Norman v. Alorica, Inc.*, No. 11-cv-0433, 2012 WL 5452196 (S.D. Ala. Nov. 7, 2012) (11.5:1 ratio for fees award to recovery).

amount of $110,000.00 in order to avoid further litigation on the attorney's fees and costs issue.

Plaintiffs' counsel expended 348.9 hours in litigating Plaintiffs' claims and estimated that an additional 20.0 hours would be spent in relation to preparing Settlement Agreement, the Notice, this Motion, and affecting delivery of the settlement checks to Plaintiffs.  *See* Ex. 4: Decl. Alan H. Garber ¶ 5.  Counsel's total hours included: meetings and conferences with Plaintiffs; preparing and filing this action and amended pleadings; legal research regarding Defendants' defenses; preparation of parties' Joint Motion for Conditional Certification; communications with Defendants regarding their Rule 68 offers of judgment and settlement offers; communications with Plaintiffs regarding Defendants' Rule 68 offers of judgment and settlement offers; preparation of Plaintiffs' filings in support of their Motion to Strike Defendants' Rule 68 Offers of Judgment; review and analysis of Defendants' data and damages analyses; negotiations with Defendants' counsel regarding settlement and damages calculations; review of joint filings prepared by Defendants; conferences with the Court; negotiations of the Settlement Agreement and proposed Notice; preparation of counsels' declarations; and preparation of this Joint Motion to Approve.  *Id.* ¶ 6.

An hourly rate of $375 for Alan H. Garber, Plaintiffs' lead counsel, is a reasonable rate in FLSA cases for counsel with his experience.[4]  *Id*. ¶¶ 3, 4. An hourly rate of $450 for Marc Garber, Plaintiffs' co-counsel, is a reasonable rate in FLSA cases for counsel with his extensive and lengthy experience.[5]

Ex. 5: Decl. Marc Garber ¶¶ 3-8.

---

[4] Plaintiffs' lead counsel, Alan Garber, has nearly 20 years' experience litigating FLSA, Title VII, and civil rights cases.  He graduated Rutgers Law School-Newark in 1994, where he was a member of the *Rutgers Law Review*. After clerking for the Honorable Sharon Lovelace Blackburn, U.S. District Court-N.D. Ala., Garber spent six years with the Birmingham law firm of Gordon Silverman Wiggins & Childs and the Atlanta law firm of Sutherland, Asbill and Brennan, before starting The Garber Law Firm.  Garber has litigated more than 100 collective-action, class-action, and individual claims in the Northern District of Georgia and other federal districts.  Counsel's collective and class actions include:  *Beavers v. American Cast Iron Pipe Co.*, CV-86-N-1982 (N.D. Ala.); *Moore v. Norfolk S. Corp.*, 2:93-CV-00133-UWC (N.D. Ala.); *Daniels v. Fontaine Fifth Wheel*, 2:94-cv-2158-HDB (N.D. Ga.); *Armstrong v. Powell*, No. CIV-03-0255C (W.D. Okla.); *Allen v. SunTrust Bank*, 1:06-cv-3075-RWS (N.D. Ga.); *Coleman v. Buffalo Rock Co.,* 2:07-cv-915-VEH (N.D. Ala.); *Layton v. DHL Express (USA) Inc.*, 2:08-cv-1542-WMA (N.D. Ala.); *Likes v. DHL Express (USA) Inc.,* 2:08-cv-428-HGD (N.D. Ala.); *Riddle v. SunTrust Bank*, 1:08-cv-1411-RWS (N.D. Ga.); *Tate v. DHL Express (USA) Inc.*, 2:08-cv-1935-VEH (N.D. Ala.); *Reece v. United Home Care of North Atlanta*, 1:12-cv-2070-RWS (N.D. Ga.); *Page v. The Hertz Corp.*, 1:12-cv-01965-WSD (N.D. Ga.); *Walker v. Vital Recovery Serv., Inc.*, 1:13-cv-534-AT (N.D. Ga.).

[5] Marc Garber is a 1985 *cum laude* graduate of the State University of New York at Buffalo Law School, after which he clerked for U.S. District Judge Jerry Buchmeyer in the Northern District of Texas.  His customary hourly rate is $550 per hour.  He has been conducting complex criminal and civil litigation in federal court for nearly 30 years—including nine years as an Assistant United States Attorney specializing in financial fraud and health-care fraud prosecutions involving losses up to $140 million dollars, plus seven years with Gibson Dunn & Crutcher and Alston & Bird, in addition to his time at the Garber Law Firm, P.C.  His practice combines complex white-

In 2011, the Honorable Richard Story found plaintiffs' counsel's hourly rates reasonable in approving the parties' settlement agreement and counsel's attorney fees. *See Zimmerman v. SunTrust Bank*, 1:09-CV-2116-RWS, 2011 WL 6778541, *2 (N.D. Ga.).  Moreover, Plaintiffs' counsel's rates are comparable to other rates approved in this jurisdiction. *E.g., Caone v. Aetna Life Ins. Co.*, 1:06-CV-3014-MNS, 2010 WL 6029242, at *8 (N.D. Ga. Dec. 22, 2010) (approving hourly rate of $425 for Atlanta-based attorney who graduated law school in 1994).

## CONCLUSION

Accordingly, Plaintiffs request that the Court (i) approve the settlement here, (ii) as to Plaintiff Lynn and all opt-ins who negotiate their settlement checks, dismiss this case and all their claims against Defendants with prejudice, (iii) as to all opt-ins who do not negotiate their settlement checks within the time period allowed, dismiss this case and all claims against Defendants without prejudice 10 days after the expiration of that period, and (iv) retain jurisdiction over this matter until the terms set forth in the Joint

---

collar criminal defense work with civil labor and employment cases.  He has tried more than a dozen complex criminal fraud trials; and he has litigated federal employment and wage and hour cases, including class action and collective action cases, in this Court and other courts in the Southeast.  He has also has argued more than 30 appeals in the 2d, 3d, 5th, 6th, 10th, and 11th Circuits; and filed eight *certiorari* petitions with the U.S. Supreme Court, including one that was granted and resulted in a summary reversal.

Stipulation of Settlement and Release have been complied with in full.  A

proposed order is attached.

Respectfully submitted,

*s/ Marc Garber*
ALAN H. GARBER
Georgia Bar No. 283840
ahgarber@garberlaw.net
MARC N. GARBER
Georgia Bar No. 283847
mngarber@garberlaw.net
THE GARBER LAW FIRM, P.C.
4994 Lower Roswell Rd Ste 14
Marietta GA 30068-5648
Tel:  (678) 560-6685
Fax: (678) 560-5067

*Counsel for the Plaintiff and the Conditionally Certified Class*

*UNOPPOSED:*

*s/ Daniel E. Turner*
Daniel E. Turner
Georgia Bar No.719330
dturner@littler.com
Beth A. Moeller
Georgia Bar No. 100158
bmoeller@littler.com
Littler Mendelson, P.C.
3344 Peachtree Road, NE, Suite 1500,
Atlanta, GA 30326-4803
Tel:  (404) 443-3525
Fax: (404) 601-7447

*Counsel for the Defendants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned attorney hereby certifies that on November 2, 2015, this motion was filed with the Clerk using the Court's CM/ECF filing system, which will serve a copy on all counsel of record.

<u>*s/ Marc Garber*</u>
MARC N. GARBER